


# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1139 | **DATE** | 1/14/2002 |
| **CASE TITLE** | Mark Weinberg vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion for Summary Judgment [#42] is denied. Summary judgment for the City is granted. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 15 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 1/14/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| FT/ *secy* | courtroom deputy's initials | | FT | |
| | | | mailing deputy initials | |

U.S. DISTRICT COURT

'02 JAN 14 PM 3:25

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MARK WEINBERG, | ) | |
| | ) | No. 01 C 1139 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Magistrate Judge |
| CITY OF CHICAGO, an Illinois | ) | Arlander Keys |
| municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiff Mark Weinberg's
Motion for Summary Judgment. Plaintiff charges that the City's
prohibition on peddling within 1000 feet of the United Center
(the "peddlers' ordinance") violates his rights under the First
Amendment. Plaintiff also attacks the Chicago Municipal Code's
licensing ordinance for peddlers ("peddlers' licensing
ordinance") as an unconstitutional prior restraint on his First
Amendment rights. For the reasons set forth below, the
Plaintiff's Motion is Denied. The Court finds that Summary
Judgment in favor of the City is warranted.

### FACTUAL BACKGROUND

The relevant facts are few and largely uncontested. In
December, 2000, Plaintiff began selling *Career Misconduct*, a book
Plaintiff authored criticizing Chicago Blackhawks owner Bill
Wirtz, on the sidewalks outside the United Center prior to the
start of Chicago Blackhawks home games. On February 14, 2001,

Chicago police officers informed Plaintiff that he was not permitted to sell his book within 1,000 feet of the United Center. These officers were enforcing the peddlers' ordinance, found in Chapter 4 of the Chicago Municipal Code, which prohibits peddling on the public walkways in certain areas throughout Chicago, including within 1,000 feet of the United Center. These officers permitted newspaper vendors to continue their sales near and around the United Center, however, because § 10-8-520 of the Chicago Municipal Code specifically exempts newspapers from the scope of the peddlers' ordinance.

Plaintiff's attorney promptly contacted the City of Chicago's Corporation Counsel's office, insisting that the peddlers' ordinance did not apply to Plaintiff's First Amendment activity of selling his book. The City disagreed, and Plaintiff filed suit in federal court seeking a temporary restraining order and preliminary injunction to prevent the City from enforcing its peddlers' ordinance against him. On February 23, 2001, Judge Guzman entered a temporary restraining order against the City, and referred the matter to this Court. The parties subsequently consented to proceed before this Court.

On March 14, 2001, this Court entered an order documenting the parties' agreement that the City would permit Plaintiff to sell his book on the sidewalk surrounding the United Center,

pending the resolution of this action.[1]  Discovery is complete

and the Court is currently presented with Plaintiff's Motion for

Summary Judgment.  Because Plaintiff's Motion for Summary

Judgment presents a pure question of law, the Court is empowered

to grant summary judgment to Defendant.  *Inter'l Union of*

*Operating Eng'rs Local 150, AFL-CIO v. Village of Orland Park,*

139 F. Supp.2d 950, 957 (N.D. Ill. 2001).

## RELEVANT LAW

Chicago's Municipal Code prohibits peddling within 1000 feet

of the United Center.  Specifically, § 4-244-147 of the Municipal

Code provides that :

> No person shall peddle merchandise of any type on any
> portion of the public way within 1,000 feet of the United
> Center.  A person holding a valid peddlers' license may
> peddle merchandise while on private property within 1,000
> feet of the United Center only from a cart, table or
> temporary stand on private property without obstructing the
> public way, and pursuant to prior written permission from
> the property owner to do so.  The provisions of this section
> shall be in addition to any other limitation on or
> regulation of peddlers.  Any person who violates any
> provision of this section shall be fined not less than
> $200.00 nor more than $500.00 for each offense, and each day
> such violation shall continue shall be deemed a separate
> offense.[2]

---

[1]  On March 9, 2001, the City filed a Motion to Clarify
Judge Guzman's February 23, 2001 Order.

[2]  Chicago has enacted similar 1000 foot restrictions on
peddling around Wrigley Field (4-244-130), Comiskey Park (4-244-
145) and the New Maxwell Street Market (4-244-146).

Section 10-8-520 of the Chicago Municipal Code requires peddlers to obtain a license and exempts newspapers from the peddlers' ordinance:

> No person, other than a licensed peddler, as by the provisions of Chapter 4-244 of this Code shall sell, offer or expose for sale, or solicit any person to purchase any article or service whatsoever, except newspapers, on any public way.

Section 4-244-040 sets for the requirements for obtaining a peddlers' license:

> Every individual who desires a license as a peddler shall make application therefor in conformity with the general requirements of this Code relating to application for licenses, and shall state the class of license sought. Such application shall also state in what commodity or article of merchandise such peddler desires or intends to deal.

Finally, Section 4-244-060 provides that:

> The annual fee for peddlers' licenses shall be as set forth in Section 4-5-010.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden of showing that the record contains no genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to show, through specific facts in the record, that there is "a genuine issue for trial." *Id.* at 324. The Court

4

examines the record in a light most favorable to the non-movant, but conclusory allegations without evidentiary support will not suffice. *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999).

## DISCUSSION

In his Motion for Summary Judgment, Plaintiff raises five arguments. First, Plaintiff claims that the peddlers' ordinance does not apply to the sale of his book because books are not "merchandise" under the Municipal Code. Next, Plaintiff argues that the City's restriction on books directly conflicts with the First Amendment's public forum doctrine and subverts First Amendment values.[3] Third, Plaintiff asserts that the peddlers' ordinance is not a reasonable time, place, and manner restriction. Fourth, Plaintiff claims that the peddlers' ordinance is void for vagueness and vests undue discretion in distinguishing between protected and unprotected speech. Finally, Plaintiff characterizes the peddlers' licensing ordinance as an unconstitutional prior restraint because it grants City officials unfettered discretion in awarding peddling licenses. The Court addresses each argument in turn.

---

[3] The public forum doctrine requires courts to strictly scrutinize ordinances which restrict speech in public places that have traditionally been held out as places of public discourse, such as parks and streets. The public forum doctrine does not ban such restrictions, but merely requires that such ordinances are reasonable with respect to the time, place, and manner of the restriction.

5

## I. The Ordinance Properly Applies to Plaintiff's Booksales.

Plaintiff invites the Court to resolve this dispute on the narrowest of grounds; Plaintiff asserts that the sale of his book does not fall within the Code's definition of merchandise, and, therefore, the peddlers' ordinance does not apply to him. Plaintiff claims that a constitutional interpretation of the ordinance requires the exclusion of books from the scope of the peddling ordinance because: 1) Chicago Police Order 92-1 protected the rights of speakers to engage in protected speech on public walkways until 1996, and interpreting the peddling ordinance to encompass sales of books would conflict with this Police Order; 2) the City may not "lump together" protected First Amendment activities and unprotected activities; 3) no court has ever distinguished between different types of printed materials for First Amendment purposes in a public forum; and 4) persuasive authority reasons that First Amendment activities should be exempted from peddling ordinances.

Clearly, the terms of the peddling ordinance encompass the sale of merchandise of any type, including books. *See generally, United States v. Hayward,* 6 F.3d 1241, 1245 (7th Cir. 1993) ("when the language of a statute is clear and unambiguous . . . the court must give effect to the plain meaning of the statute.") The Court is not persuaded by Plaintiff's assertion that a superceded Chicago Police Order, which exempted the sale

of certain First Amendment goods from enforcement of the peddlers' ordinance, alters the plain and unambiguous language of the peddlers' ordinance.[4]  Moreover, Plaintiff provides no support for his position that the Chicago Police Department has the authority to offer binding interpretations of City ordinances.

The Court further finds that Plaintiff's attempts to circumvent the plain language of the ordinance miss the mark. First, there is no prohibition against an ordinance restricting constitutionally protected and non-protected activity equally, as Plaintiff suggests.  *See Ayres v. City of Chicago*, 125 F.3d 1010, 1016 (7th Cir. 1997) (noting that the City could ban both unprotected and First Amendment peddlers from selling goods in certain areas); *One World One Family Now v. City of Honolulu*, 76 F.3d 1009, 1012 (9th Cir. 1997) (ban on sales of all goods on city sidewalks is content neutral, even though the ordinance banned the sale of items containing expressive messages.)  "The First Amendment does not guarantee the right to communicate one's view at all times and places or in any manner that may be desired." *Heffron v . Int'l Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 647 (1981).

---

[4] A 1996 amendment to the 1992 Chicago Police Order eliminated any protections for First Amendment activity on public walkways. *See* Chicago Police Order 92-1, Addendum 2.

Cities may enact ordinances restricting speech, as long as the ordinances "are justified without reference to the content of the regulated speech, are narrowly tailored to serve a significant government interest, and [leave] open ample alternative channels for communication of the information." *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989) (*quoting Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293 (1984)). Recently, the United States Supreme Court upheld an ordinance prohibiting persons from knowingly attempting to protest, educate, or counsel another within eight feet of a health care facility. *Hill v. Colorado*, 530 U.S. 703 (2000). The Court found that the ordinance satisfied the *Ward* content-neutral test because it did not regulate the content of the prohibited speech, it applied equally to all demonstrators without regard to their message, and it was not enacted "because of disagreement with the message." *Id.* at 719-20.

Similarly, this Court rejects Plaintiff's claim that the Court must construe the peddling ordinance to exclude book sales (or other First Amendment activity) to achieve a constitutional interpretation of the peddling ordinance. The peddlers' ordinance does not restrict the content of speech, but merely limits when and where merchandise, including expressive materials, may be sold. In addition, Plaintiff has produced no evidence that the ordinance was enacted because of disagreement

with a particular message.  Plaintiff claims, however, that the City's distinction between newspapers and other First Amendment goods renders the ordinance content based, and asserts that no court has ever made a distinction between different types of printed materials for First Amendment purposes.

The Court disagrees.  In *Graff v. City of Chicago*, 9 F.3d 1309, 1320-21 (7th Cir. 1993), the Seventh Circuit held that "the City can recognize that people impulsively or routinely purchase newspapers in seconds.  The more time-consuming purchase of books or videotapes, in contrast, would cause congregation and impede the flow of others."  Similarly, in *City of Cincinnati v. Discovery Network, Inc.,* the Supreme Court recognized that a city may properly distinguish between newspapers and other printed material if the selected ban is justified, or furthers a legitimate government interest. 507 U.S. 410, 429-30 (1993) (holding that Cincinnati failed to establish that its selective ban on newsstands selling commercial handbills furthered its legitimate interest).  Accordingly, the Court finds that the City's distinction between newspapers and all other First Amendment items does not, in and or itself, render the peddlers' ordinance unconstitutional.

Finally, Plaintiff  claims that New York caselaw and legislation, which exempt speech and/or books from peddling restrictions, favor a similar interpretation of Chicago's

peddlers' ordinance. However, the Seventh Circuit has already
commented on the propriety of the peddlers' ordinance's ban on
certain First Amendment activities, as it applied to the central
district of downtown Chicago: "What is questionable about the
Peddlers' Ordinance is not the ordinance itself but rather the
size of the district that the city council has designated as a
no-peddling zone . . . . It is one thing to ban peddlers,
including. . . 'First Amendment' peddlers, from Grant Park; it is
another to ban the latter from the surrounding streets as well."
*Ayers*, 125 F.3d at 1015-16 (noting that the "case would be in a
different posture if the designation had been limited to Grant
Park.") The *Ayers'* court indicated that, while the peddlers'
ordinance was not a reasonable restriction as it applied to the
entire central downtown Chicago district, the City's decision to
ban both protected and non-protected activities was entirely
appropriate. The Seventh Circuit's analysis of Chicago's
peddlers' ordinance – not New York caselaw and legislation – is
the proper guide in this case.

The plain and unambiguous language of the peddlers'
ordinance indicates that the ordinance restricts the sale of
books in certain areas of the City. Plaintiff's argument that
the peddlers' ordinance is unconstitutional because it bans the
sale of both constitutionally protected and unprotected
merchandise is without merit. The Court must now determine

10

whether the peddlers' ordinance is a reasonable and content-neutral time, place, and manner restriction.

## II.  The Peddlers' Ordinance Is A Content-Neutral Time, Place, and Manner Restriction

The Constitution does not require the government to permit persons to exercise their First Amendment rights "on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities."  *Cornelius v. NAACP Legal Defense and Education Fund, Inc.*, 473 U.S 788, 799-800 (1985).  The Government may impose reasonable restrictions on the time, place and manner of First Amendment speech, "provided that the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant government interest, and that they leave open ample alternative channels for communication of the information.'"  *Ward*, 491 U.S. at 791 (quoting *Clark,* 468 U.S. at 293.)

In this case, Plaintiff contends that the peddlers' ordinance is not content neutral, is not narrowly tailored, leaves inadequate alternative channels for communication, and is unconstitutionally vague.  The Court addresses each argument in turn.

### A.  The Peddlers' Ordinance is Content Neutral

Clearly, an ordinance enacted because of the government's disagreement with a particular  message is content based, and not

content neutral. *Nat'l Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 737 (1st Cir. 1995). However, "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward,* 491 U.S. at 791. An ordinance is content neutral if it is enacted in response to secondary effects resulting from the protected expression, rather than the message contained therein. *Renton v. Playtime Theaters Inc.,* 475 U.S. 41, 47-49 (1986) (ordinance regulating adult film theaters was content neutral because it was enacted to curb the secondary effects of such theaters on the surrounding community, and not the content of the films.). Courts frequently review the government's "justification" for enacting an ordinance or regulation in determining whether the regulation is content based or content neutral. *City of Cincinnati,* 507 U.S. at 429-430.

Despite Plaintiff's insinuations that he and his book were the target of the peddlers' ordinance, the ordinance was enacted long before Plaintiff published his book[5] and was not enacted in response to Plaintiff's speech. And there is no dispute that the

---

[5] The Court notes that the peddlers' ordinance was passed in October, 1995, and that Chicago Police Order 92-1 was amended in 1996, years before Plaintiff published *Career Misconduct.* In addition, Plaintiff has not produced evidence or advanced a serious argument that the City permitted the sales of other books or First Amendment merchandise – except newspapers – within 1000 feet of the United Center, or that the City's enforcement of the ordinance against him was based on the content of his book.

peddlers' ordinance applies to all merchandise – except newspapers – equally, regardless of their content. Plaintiff contends, however, that the City's decision to exempt newspapers from the peddlers' ordinance renders the ordinance content based.

The City claims that it enacted the peddlers' ordinance in response to the traffic and pedestrian congestion and hazards exacerbated by peddlers around and near the United Center. The Seventh Circuit has recognized that the City has a significant governmental interest in promoting the organized, effective, and safe flow of traffic. *MacDonald v. City of Chicago,* 243 F.3d 1021, 1034 (7th Cir. 2001); *Graf v. City of Chicago* 9 F.3d 1309, 1316 (7th Cir. 1993)(ensuring the flow of pedestrian street traffic constitutes a substantial government interest.)

In addition, the City has offered evidence supporting its claim that peddlers were, in fact, creating traffic and pedestrian flow problems around the United Center prior to the enforcement of the peddlers' ordinance. Officer John Walls[6] testified at his deposition that, prior to the enactment of the peddlers' ordinance, peddlers slowed up and even stopped traffic, even though all peddlers were required to be "mobile." Walls Dep. at pp. 31-32. "For years I have been asking to have all the vendors removed to the other side of the street because you can't

---

[6] Officer Walls is a 31-year veteran of the Chicago Police Department, who has patrolled the area around the United Center for over nine years.

13

have vendors out there when you're trying to get 22,000 people or 24,000 people into a Bulls game, because everyone of them disrupts and causes problems" with regard to traffic congestion and pedestrian safety. *Id.* at pp.32-33. Specifically referencing Plaintiff's activities, Officer Walls stated that Plaintiff frequently gathered crowds of six to eight people, and that "[w]hen you have a crowd of six people eight people standing at the mouth of the sidewalk, these people have to go outside that protected area in order to get around or - and even if they're just walking around four or five people in a sidewalk - I mean outside the sidewalk on the street, to me that's obstructing." *Id.* at p. 44.

Officer Walls also testified that the peddlers' ordinance "helped immensely" and greatly reduced the congestion around the United Center, stating that when "we were able to move [the peddlers] away, it opened up traffic to where it was like a difference on night and day. We didn't even realize how much of a problem we had because it was there all the time. As we moved the vendors away, we were able to - we actually could use less officers in certain areas and put them into the main crosswalks and everything became more orderly." (Walls Dep. at p. 33.)

Next, the City's distinction between newspapers and other merchandise is justified and necessary to achieve its goals of reducing congestion and improving safety around the United

Center.  *See Graf*, 9 F.3d at 1320 (agreeing that "the more time-consuming purchase of books or videotapes . . . would cause congregation and impede the flow of others who would then have to walk around [purchasers])."   A discussion of the Supreme Court's analysis in *City of Cincinnati* illustrates the point well.

In *City of Cincinnati,* the Supreme Court explained that a city may properly distinguish between newspapers and other printed material if the selected ban is justified, or furthers a legitimate government interest.   507 U.S. at 429-430.   In that case, Cincinnati claimed that its ordinance restricting newsstands that distributed commercial handbills was justified by its interest in promoting aesthetics and in reducing litter. However, there was no similar restriction on newsstands distributing newspapers, and the ordinance did virtually nothing to reduce the overall number of newsstands.

The Supreme Court rejected Cincinnati's claim that its distinction between newspapers and handbills was justified.   The Supreme Court explained that "[t]he distinction Cincinnati has drawn has absolutely no bearing on the interests it has asserted."  *Id*. at 428.   The requisite fit between Cincinnati's justification for enacting the ordinance and the scope of the ordinance was not established; although Cincinnati claimed that it enacted the ordinance to reduce newsstands and the litter and blight associated with them, the ordinance did not restrict the

overall number of newsstands, but merely restricted the type of publications the existing newsstands were permitted to sell. *Id.* at 428 (noting that the City had not established the required "fit between its goals and its chosen means.") Cincinnati presented no evidence demonstrating that a newsrack's inclusion of commercial handbills, as opposed to newspapers, was somehow related to the problems the ordinance sought to cure.

In the instant case, however, the City of Chicago has presented evidence that its selective ban on all merchandise other than newspapers does significantly reduce its problems with traffic and pedestrian flow. Officer Wall testified that, unlike newspaper sales, the sales of books and other merchandise around the United Center were time consuming and had caused people to congregate and block traffic and pedestrian flow. Walls' Dep. at p. 38. "A newspaper guy will offer a paper, they take it, and they move. With the book sales, people would stop. They would actually stop. Maybe two or three books would be out, and they're looking at the book, trying to make a determination if they want to buy the book and it wasn't just like a quick sale, take it and run, so people were stopping more" *Id.*

In response, Plaintiff asserts that he, personally, did not contribute to traffic or pedestrian congestion, and directs the Court's attention to a videotape from February 2001, documenting Plaintiff's book sales outside of the United Center. However,

16

"[i]n evaluating the validity of the . . . . Peddlers' Ordinance
. . . [the Court looks] to the entire range of activities that
would be freed from regulation if the plaintiff prevailed," not
just the Plaintiff's activities. *Ayres*, 125 F.3d at 1015.
Therefore, the fact that Plaintiff's booksales did little to
disrupt pedestrian traffic and safety on one evening is of little
relevance to the Court's present  inquiry.  The Court must focus
on the aggregate impact of permitting all vendors to peddle their
wares.

The Court finds that the City has demonstrated that the
peddlers' ordinance was enacted to further a legitimate
government interest[7]; its interest in ensuring pedestrian safety
and reducing traffic congestion around the United Center.  In
addition, the City has demonstrated that its distinction between
newspapers and other merchandise is justified; the less time-
consuming newspaper purchases had a minimal impact on the City's
legitimate interests.  Therefore, the Court finds that the

---

[7]  Although Plaintiff makes much of the fact that the City
has not cited to any studies or reports supporting its
justification for enacting the peddlers' ordinance, the Supreme
Court has stated that "[t]he First Amendment does not require a
city, before enacting such an ordinance, to conduct new studies
or present evidence independent of that already generated by
other cities, so long as whatever evidence the city relies upon
is reasonably believed to be relevant to the problem the city
addresses." *Renton*, 475 U.S. at 51-52.  The Seventh Circuit had
already stated in *Graf* that the City is free to recognize that
the sales of books and videos are more time consuming and cause
more congestion than the sale of newspapers. 9 F.3d at 1320.

peddlers' ordinance is a content-neutral restriction on
Plaintiff's First Amendment rights. The Court must now determine
whether the peddlers' ordinance is narrowly tailored, and whether
it leaves open ample alternative channels for communication.

## B. The Ordinance Is Narrowly Tailored

A regulation is narrowly tailored if it "promotes a
substantial government interest that would be achieved less
effectively absent the regulation." Ward, 491 U.S. at 799. In a
traditional public forum, such as streets and parks, these
restrictions must not substantially curtail speech more than
necessary. However, an ordinance furthering a significant
governmental interest need not be the least restrictive method
for achieving the government's goal to satisfy the narrowly-
tailored test. *International Union of Operating Engineers, Local
150 v. Village of Orland Park,* 139 F. Supp.2d 950 (N.D. Ill.
2001). The regulation is narrowly tailored if the government's
interests "would be achieved less effectively absent the
regulation." *Ward*, 491 U.S. at 799.

The Court has already determined that the City has a
substantial governmental interest in ensuring pedestrian safety
and reducing traffic congestion. *See generally Heffron v.
Intern'l Soc'y for Krishna Consciousness,* 452 U.S. 640, 649-50
(1981) (the need to maintain orderly movement of the crowd in
congested areas is a significant governmental interest). The

Court further finds that the ordinance does not substantially curtail speech more than is necessary to achieve its goals.

The evidence demonstrates that most, but not all, of the United Center's major parking lots are located within 1000 feet of the United Center. It follows, therefore, that automobile and pedestrian traffic is most heavily concentrated within that area. As such, the City's ordinance directly targets its legitimate concerns; the ordinance bans peddling - an activity that disrupts pedestrian and traffic flow - in the area with the heaviest concentration of pedestrians and automobiles.

Nevertheless, Plaintiff contends that because the City's ordinance does not expressly prohibit street performers or leafleting in the area, the ordinance is not narrowly tailored. However, there is no evidence that either street performers or persons leafletting were contributing to the problem the City sought to address - safety and congestion. The City's evidence indicates that officers charged with patrolling the area around the United Center found that vendors impeded traffic and compromised pedestrian safety, and Plaintiff has not introduced any evidence to the contrary.

Plaintiff also argues that the City might be able to achieve its goal by enacting regulations that permitted booksellers to hawk their goods, but authorized officers to disperse crowds or sanction improper bookselling behavior. While

this might be an alternative to the peddlers' ordinance, it is not the Court's role to substitute its judgment regarding appropriate remedies for pedestrian and automotive traffic for that of the City Council. Notably, this is not a case where the Plaintiff has proffered or the City has rejected numerous alternative, and less-restrictive, remedies to the congestion and safety problems. The City has demonstrated that the ordinance is not "substantially broader than necessary to achieve the government's interest" and the Court will not invalidate it based upon Plaintiff's speculation "that the government's interest could be adequately served by some less-speech restrictive alternative." *Ward*, 491 U.S. at 799.

The Court finds that the peddlers' ordinance promotes a substantial government interest that would be achieved less effectively absent the regulation. Therefore, the City has satisfied the narrowly-tailored test.

## C. The Ordinance Leaves Open Ample Alternative Channels for Communication.

The final inquiry in evaluating whether the City's peddling ordinance is a reasonable time, place, and manner restriction is whether the ordinance leaves open alternative channels for communication of the information. The peddlers' ordinance satisfies this standard if Plaintiff is able to disseminate his message, even if the remaining avenues for communication may not be as effective or ideal as the one that is restricted by the

regulation. *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984)(distributing leaflets was an adequate alternative to posting campaign signs)

Several alternative channels of communication exist to enable Plaintiff to disseminate his message. Plaintiff has already successfully availed himself to sales via the Internet, and he has had limited success selling his book in local bookstores. If he obtains a peddlers' license, he is free to sell his book on the public way in other areas of the City. And if he obtains both a peddlers' license and permission from a private property owner within 1000 feet of the United Center, he is free to sell his book on that property.

Notably, the peddlers' ordinance does not prohibit Plaintiff from disseminating his <u>message</u>, it merely limits the areas in which he can sell his book. While the ordinance restricts Plaintiff's ability to sell his book within 1000 feet of the United Center, Plaintiff is free to distribute leaflets outlining his position with regard to Mr. Wirtz, or even advertising his book and website, within that area. Plaintiff may also distribute his book free of charge within 1000 feet of the United Center.

Plaintiff's claim that the area immediately around the United Center represents the greatest concentration of the book's target audience does not compel a finding in his favor. "The

fact that crowds are concentrated in a particular area does not, in and or itself, make that location a reasonable place for expressive activity, despite the fact that it may be desirable to the plaintiffs for that very reason." *Chicago ACORN, SEIU Local No. 880 v. Metropolitan Pier and Exposition Authority,* NO. 96 C 4997, 1999 WL 413480, at *11 (N.D. Ill. June 2, 1999). The First Amendment does not guarantee Plaintiff a specific type of access to the exact audience he wishes to address. The Court finds that the peddlers' ordinance does not foreclose alternative channels for communication.

### D.  The Ordinance is Not Unconstitutionally Vague

Plaintiff's final challenge to the peddlers' ordinance is that the term "newspaper" is unconstitutionally vague. The Court disagrees. An ordinance is unconstitutionally vague if 1) it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited; and 2)it permits or promotes arbitrary and discriminatory enforcement. *Hill v. Colorado*, 503 U.S. 703, 732 (2000).

Plaintiff contends that publications such as Newsweek, which can not be neatly labeled a book or a newspaper, highlight the vagueness of the ordinance. However, "it is clear what the ordinance as a whole prohibits . . . [and] speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is

surely valid 'in the vast majority of its intended applications.'" *Id.* at 733. (quoting *United States v. Raines,* 362 U.S. 17, 23 (1960)).

The Court finds that a person of ordinary intelligence understands the term "newspaper"[8] and that the exclusion of newspapers from the ban on peddling merchandise affords such persons a reasonable opportunity to understand what conduct is prohibited. In addition, the exclusion of newspapers from the ban on peddling merchandise does not encourage or authorize arbitrary or discriminatory enforcement. The exemption of newspapers from the peddlers' ordinance does not render the ordinance unconstitutionally vague.

The Plaintiff's Motion for Summary Judgment on the issue of the constitutionality of the peddlers' ordinance is denied. Summary Judgment is instead granted in favor of Defendant.

### III. The Licensing Procedures Under Chapter Four of the City's Municipal Code Do Not Violate the First Amendment.

Plaintiff next challenges the City's peddlers' licensing ordinance as an unconstitutional prior restraint, claiming that the ordinance vests the City with unfettered discretion to decide whether to grant or deny peddlers a permit to sell their

---

[8] Plaintiff also argues that, because the City's witnesses have never offered a consistent definition of the term newspaper, the term must be vague. However, the definitions offered by the City's witnesses, while not identical, are not inconsistent with each other.

merchandise in the City of Chicago, in violation of the First Amendment. At the outset, the Court notes that neither party has presented the Court with substantial argument or research on this issue. Inexplicably, neither party found it necessary to address whether there is a sufficient nexus between the licensing scheme and protected expression, challenge or assert standing, explain whether the ordinance permits the licensing official to review the content of items to be peddled, present evidence on the actual implementation of the ordinance, or discuss the issue of redressability. While some of these matters are readily disposed of, such as redressability[9], others present complex legal and factual issues, which the Court must address without the benefit of the parties' briefing.

Plaintiff admits that he neither applied for nor was denied a permit to peddle, but claims that a facial challenge to the peddlers' ordinance is warranted because the ordinance unconstitutionally vests in City officials unfettered discretion to grant or deny peddling permits. *FW/PBS Inc. v. City of Dallas,* 493 U.S. 215, 223 (1990) ("Although facial challenges to legislation are generally disfavored, they have been permitted in

---

[9]    *See MacDonald v. City of Chicago*, No. 97 C 5266, 1998 WL 748350, at *3 (N.D. Ill. Oct. 21, 1998) (even though the court's ruling upholding certain subsections of a challenged ordinance meant that plaintiff's remaining challenge to another subsection could no longer redress his injuries, plaintiff had standing to challenge the remaining subsection because "plaintiff's standing was determined at the time he filed his lawsuit.")

the First Amendment context where the licensing scheme vests unbridled discretion in the decisionmaker and where the regulation is challenged as overbroad.") A person need not subject himself to the requirements of an ordinance if the ordinance, on its face, vests unbridled discretion in a government official over whether to permit or deny expressive activity. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-56 (1988). "The success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the ordinance preventing him from doing so." *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 133 (1992).

Courts permit plaintiffs to challenge licensing schemes granting officials unfettered discretion, not because discretion, in and of itself, is unconstitutional, but because such schemes frequently carry the risk of self-censorship and confer upon corrupt public officials the ability to conceal their illegitimate abuse of power by censoring protected expression. *City of Lakewood*, 486 U.S. at 759; *see also Forsyth County,* 505 U.S. at 131 (holding ordinance unconstitutional where it permitted county official to examine the content of the applicant's message and to correspondingly vary fees for

assemblies to reflect the cost of maintaining public order with respect to the particular message). It necessarily follows, therefore, that not every licensing scheme that vests a decisionmaker with unbridled discretion is subject to a facial attack. *City of Lakewood,* 486 U.S. at 759. Rather, the licensing scheme must also have a "close enough nexus to expression or expressive conduct to give rise to a substantial threat of undetectable censorship" *Id.*

Therefore, the Court must determine both whether the peddlers' licensing ordinance vests City officials with unfettered discretion and whether the ordinance has a close nexus to expression.

## A. The Ordinance Vests the Licensing Official With Unfettered Discretion.

Plaintiff convincingly argues that the Chicago peddlers' licensing ordinance vests City officials with unfettered discretion to grant or deny peddling licenses. The ordinance is devoid of any criteria to guide licensing officials in reviewing license applications, providing only that:

> Every individual who desires a license as a peddler shall make application therefor in conformity with the general requirements of this Code relating to applications for licenses, and shall state the class of license sought. Such application shall also state in what commodity or article of merchandise such peddler desires or intends to deal.

Chicago Municipal Code s 4-244-040.

The ordinance at issue is readily distinguishable from the
Chicago Park District permit ordinance reviewed by the Seventh
Circuit in *Thomas v. Chicago Park District,* 227 F.3d 921 (7th
Cir. 2000), *cert. granted,* 121 S.Ct. 2191, 149 L.Ed. 2d 1023
(U.S. May 29, 2001) and the City of Chicago parade permit
ordinance challenged in *MacDonald v. City of Chicago*, 243 F.3d
1021 (7th Cir. 2001).  In both *Thomas* and *MacDonald*, the
plaintiffs claimed that the criteria set forth in the challenged
ordinances were so vague as to vest the respective officials with
limitless discretion in issuing permits.

The Seventh Circuit disagreed, finding instead that, in both
instances, the challenged ordinances contained sufficient
limitations on the respective officials' discretion.  *Thomas,* 227
F.3d at 924 (noting that "[a] challenge to the wording as
distinct from the application of a regulation invites semantic
nitpicking"); *MacDonald,* 243 F.3d at 1027 (ruling that the
challenged ordinance specified "legitimate safety concerns in as
precise a manner as such concerns can reasonably be
articulated.")[10]

---

[10] In *MacDonald*, the Seventh Circuit further explained that
prior restraint analysis applies to licensing schemes vesting
officials with unfettered discretion. 243 F.3d at 1030.
Conversely, ordinances that do not place unfettered discretion in
the hands of city officials and do not involve censorship should
be analyzed according to the time, place, and manner guidelines.
*Id.* at 1030-31.  In addition, the court relied heavily upon the
fact that the parade permit ordinance did not prohibit anyone
from marching – because it required the Commissioner to issue an

In the instant case, however, Plaintiff does not take issue with the vagueness of certain guiding criteria. This was not an oversight; such an argument would be impossible in this case because there are simply no criteria to challenge as vague. In contrast to the allegedly obscure standards contained in the *Thomas* and *MacDonald* ordinances, there are no standards whatsoever to guide the City's licensing official in determining whether or not to grant a peddling permit. The peddlers' licensing ordinance vests total discretion in the City's licensing official to grant or deny a license to peddle, even when a peddler is engaging in speech activities on the public way.

The City responds with two underdeveloped arguments. The first is that the City's licensing official does not have any discretion to deny an application for a peddler's license. The City's position is untenable. The Court will not read limitations into the ordinance that do not appear in the text of the ordinance itself. *City of Lakewood* ("The doctrine requires that the limits the city claims are implicit in its law be made explicit by textual incorporation binding judicial or administrative construction, or well-established practice. ")

---

alternative permit – but merely restricted the time and place of the parade. *Id.* at 1032. Conversely, the peddlers' licensing ordinance does authorize unfettered discretion and can prohibit legal peddling within Chicago.

To the extent the City is actually arguing that, in practice, the City never denies a peddlers' license application, or that it has developed guidelines limiting the licensing official's discretion, it has failed to make its case. Although the Supreme Court has permitted governments to rebuff facial challenges to ordinances by presenting evidence that the government has developed a uniformly applied practice in administering the ordinance, which constitutionally limits the application of that ordinance, *City of Lakewood,* 486 U.S. at 770 n. 11, the City has failed to produce any such evidence in this case. The Court finds that the City's bald assertion that the licensing official does not have unfettered discretion, contained in a  single line in its response brief, is not sufficient evidence at this stage of the proceedings.

Next, the City briefly states that the ordinance does not permit the licensing official to censor First Amendment speech, because the ordinance only requires the peddler to identify the "commodity or article of merchandise" he wishes to sell. The Court can envision instances where merely identifying the commodity or article of merchandise to be sold would sufficiently alert the licensing official to the content of the applicant's speech or expression so as to permit censorship; this case may be just such an instance. The record reveals that City officials were keenly aware of – and concerned about -- Mr. Weinberg's book

and booksales prior to the filing of this lawsuit. It is not too speculative to suppose that a licensing official presented with Mr. Weinberg's application to sell *Career Misconduct* would be sufficiently apprized of the content of Mr. Weinberg's book to permit the opportunity for censorship.

The Court, therefore, finds that Plaintiff has established that the ordinance vests the City with an impermissible degree of discretion to regulate peddling, and fails to set forth any standards by which the City is supposed to exercise this power.

**B. The Ordinance Does Not Have A Close Nexus to Expression.**

This is not the end of the Court's inquiry, however, as Plaintiff must also establish that the ordinance has a "close enough nexus to expression or expressive conduct." This presents the closer question, and requires an examination of the Supreme Court's decision in *City of Lakewood.*

In *City of Lakewood,* the Supreme Court struck down a licensing ordinance governing the placement of newsracks in the city. The ordinance offered minimal restrictions on the licensing official's discretion. Nevertheless, the Court explained that a licensing scheme must do more than merely vest unbridled discretion in city officials before a plaintiff can proceed on a facial challenge. In addition, "[t]he law must have a close enough nexus to expression to pose a real and substantial threat of the identified censorship risks." 486 U.S. at 759.

The Court found that Lakewood's ordinance had a close enough nexus to expression, and the attendant risk of censorship, for two reasons. First, the requirement that the licenses be renewed annually fostered self-censorship. Second, the ordinance was "directed narrowly and specifically at expression" – the circulation of newspapers. Given these characteristics, the Court found that there was more than a  mere possibility that censorship could occur. The Court found that a facial challenge was available because the plaintiff had demonstrated that the licensing scheme afforded licensing officials "substantial power to discriminate" and that there existed a "real and substantial threat" of censorship. 486 U.S. at 759-60.

The Court further illustrated the parameters of the "nexus to expression" requirement by distinguishing Lakewood's newsrack ordinance from a hypothetical ordinance requiring soda vendors to obtain a license.   The Court explained why a facial challenge to an ordinance granting city officials unfettered discretion to issue soda vending licenses should not be permitted:

> Newspapers are in the business of expression, while soda vendors are in the business of selling soft drinks.  Even if the soda vendor engages in speech, that speech is not related to the soda; therefore preventing it from installing its machines may penalize unrelated speech, but will not directly prevent that speech from occurring.  In sum, a law giving the mayor unbridled discretion to decide which soda vendors may place their machines on public property does not vest him with frequent opportunities to exercise substantial power over the content or viewpoint of the vendor's speech by suppressing the speech or directly controlling the vendor's ability to speak.

*Lakewood,* 486 U.S at 760. The Court noted that "[l]aws of
general application that are not aimed at conduct commonly
associated with expression" rarely carry the attendant censorship
risks that justify a facial challenge. *Id.* at 760-61. Although
such laws could be used as instruments of censorship, the
inherent risk of such a nefarious abuse does not warrant
departing from the requirement that the plaintiff suffer an
actual injury. The availability of an as applied challenged is a
sufficient remedy for such abuses. *Id.*

Admittedly, unlike the soda vendor, a peddler's speech may
very well be related to the item he is peddling. Therefore, at
least with regard to some peddling applicants, a City official
will be presented with the opportunity to exercise power over the
peddler's speech. Nevertheless, the Court finds that the City's
peddlers' licensing ordinance presents "too blunt a censorship
instrument to warrant judicial intervention prior to an
allegation of actual misuse." *Id.* at 761. While some peddlers
will seek to sell items related to speech, such as Plaintiff,
many others will not.

Although the peddlers' licensing ordinance can impact First
Amendment expression, it does so only incidentally. *Schneider v.
New Jersey,* 308 U.S. 147, 160-61 (1939) (state may prohibit
speaker from "taking his stand in the middle of a crowded street,
contrary to traffic regulations . . . since such activity bears

no necessary relationship to the freedom to speak, write, print or distribute information or opinion.")   The peddlers' licensing ordinance primarily seeks to regulate commercial activity, not speech or expression. *See Gannett Satellite Information Network, Inc. v. Berger,* 894 F.2d 61, 69-70 (3d Cir. 1990) (general regulation of "commercial activity" did not meet nexus requirement.);   *Roulette v. City of Seattle,* 97 F.3d 300, 305 (9th Cir. 1996) (insufficient nexus where ordinance banned sitting or lying on sidewalks).  "Like laws requiring individuals to obtain building permits for certain purposes . . . a regulation requiring governmental consent for commercial activity will seldom serve as an effective means of censorship."  *Gannett,* 894 F.2d at 69.

There are, of course, instances where regulation of commercial activity will provide significant opportunities for censorship.  In *Gaudiya Vaishnava Society v. City and County of San Francisco,* 952 F.2d 1059 (9th Cir. 1991), the Ninth Circuit permitted nonprofit corporations to facially challenge an ordinance prohibiting them from selling their message-bearing merchandise in the Fisherman's Wharf or Union Square areas of San Francisco.  *Id* at 1062-63.  In that case, however, the court examined only that subsection of the ordinance that required nonprofits to obtain a permit before engaging in sales solicitations for charitable purposes; that ordinance did not

apply to other types of merchandise. *Id.* at 1061-62. Therefore, the court readily found that the ordinance had a close nexus to expression. *Id.* at 1062-63. The Chicago peddlers' licensing ordinance contains no similar limitation; it applies equally to persons peddling books and those peddling peanuts.

More analogous is one of the ordinances *reviewed in International Union of Operating Engineers, Local 150, AFL-CIO v. Village of Orland Park,* 139 F. Supp.2d 950, 962 (N.D. Ill. 2001). In *Local 150*, the court found that a forest preserve's special activity permit requirement did not have a close enough nexus to expression to pose a substantial risk of censorship, because the ordinance regulated activities that were not protected (such as sporting events) as well as protected activities. *Id.* The court held that "[b]ecause not every application of the Forest Preserve's permit procedure infringes on protected constitutional rights," a facial challenge was inappropriate. *Id.*

Similarly, the Court finds that the peddlers' licensing ordinance is not "narrowly and specifically" directed at expression. Although the ordinance may implicate speech occasionally, it does not necessarily do so. The ordinance is also directed at those selling peanuts and baseball hats, which are not - or perhaps only remotely - expressive activities. Because the ordinance does not carry a substantial risk of censorship with regard to the entirety of peddlers' license

applications, the ordinance does not have a close enough nexus to expression to justify a facial challenge. Therefore, Plaintiff's Motion for Summary Judgment is Denied.

### CONCLUSION

For the reasons set forth above, the Court finds that the City's peddlers' ordinance is a reasonable time, place, and manner restriction. Therefore, the Court denies the Plaintiff's Motion for Summary Judgment on this issue and grants Summary Judgment to the City. Similarly, the Court rejects Plaintiff's facial challenge to the City's peddlers' licensing ordinance, because the ordinance – although it vests the City with an impermissible degree of discretion to regulate peddling without setting forth standards for the exercise thereof – does not have a close enough nexus to expression to justify a facial challenge. Therefore, Plaintiff's Motion for Summary Judgment is Denied.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment be, and the same hereby is, DENIED. IT IS FURTHER ORDERED that Summary Judgment for the Defendant be, and the same hereby is, GRANTED.

DATED: January 14, 2002

Enter:

_ArlanderKeys_

ARLANDER KEYS
United States Magistrate Judge

35